UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JAMES CHARLES TOOLEY, | Case No. 6:21-cv-01352-AA |
| Petitioner, | OPINION AND ORDER |
| v. | |
| JOSHUA HIGHBERGER, | |
| Respondent. | |

AIKEN, District Judge.

Petitioner brings this action for federal habeas relief pursuant to 28 U.S.C. § 2254 and challenges his state court convictions for Aggravated Murder and Solicitation and Conspiracy to Commit Aggravated Murder. Petitioner contends that his counsel rendered ineffective assistance at trial in violation of his rights under the Sixth Amendment. The Oregon courts rejected Petitioner's claims in decisions that are entitled to deference, and he is not entitled to federal habeas relief.

1   - OPINION AND ORDER

BACKGROUND

On October 16, 2009, Petitioner was indicted on four counts of Aggravated Murder and two counts each of Solicitation and Conspiracy to Commit Aggravated Murder. Resp't Ex. 102 at 2-3. The Aggravated Murder charges arose from the shooting deaths of Anthony Cooper and Melinda Kotkins, a married couple who were associates of Petitioner in the sale of illegal drugs, including Oxycontin. *State v. Tooley*, 265 Or. App. 30, 33 (2014). Cooper and Kotkins were found shot to death in their home, and Petitioner was allegedly the last person to have seen or spoken to them before their bodies were discovered. *Id.* at 34; Transcript of Proceedings (Tr.) 3070-74, 3079-82, 3097.

The charges of Solicitation and Conspiracy to Commit Aggravated Murder arose from Petitioner's alleged conspiracy with a third party to kill Petitioner's cousin, Jesse Smith, to prevent Smith from testifying as a witness against Petitioner on the murder charges. Tr. 3641-42. While on a camping trip with Smith, Petitioner allegedly confessed and told Smith that he killed Kotkins at her home and then killed Cooper after giving him a ride home from jail. Tr. 2986, 2993-94. According to Smith, Petitioner killed Cooper and Kotkins to take over their drug business.

After a multi-week jury trial, Petitioner was convicted of two counts of Aggravated Murder, two counts of Solicitation to Commit Aggravated Murder, and one count of Conspiracy to Commit Aggravated Murder. Following a penalty phase trial, the jury found that Petitioner should not be sentenced to death on the Aggravated Murder convictions. Tr. 5038-39. The trial court sentenced Petitioner to two consecutive terms of life imprisonment with a minimum of thirty years and a consecutive term of 120 months' imprisonment. Resp't Ex. 101 at 3-8.

Petitioner filed a direct appeal asserting eight assignments of error. Resp't Ex. 103. The Oregon Court of Appeals affirmed in a written opinion and the Oregon Supreme Court denied review. Resp't Exs. 106, 108. Petitioner then sought post-conviction relief (PCR) in state court, arguing that counsel rendered ineffective assistance in several respects. Resp't Ex. 110-11. The PCR court denied review, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 143, 147-48.

On September 13, 2021, Petitioner sought federal habeas relief in this action.

DISCUSSION

Petitioner asserts numerous Grounds for Relief in his Petition. *See* Pet. (ECF No. 2). In his supporting brief, however, Petitioner presents argument in support of only Grounds 1(B), 1(D), 1(E), and 1(I). *See generally* Pet'r Brief (ECF No. 34). Upon review of the record, I find that Petitioner fails to prove entitlement to habeas relief on the remaining grounds for relief, for the reasons set forth in Respondent's Response. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (stating that a habeas petitioner bears the burden of proving the alleged claims); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (accord).

In Claim 1(B), Petitioner alleges that trial counsel provided ineffective assistance by failing to argue that due process required the admission of statements Petitioner made to the police. In Claims 1(D) and (E), Petitioner contends that counsel was ineffective by failing to challenge testimony about Petitioner's possession of a semi-automatic handgun that was unrelated to the murders. And in Claim 1(I), Petitioner alleges that trial counsel unreasonably failed to seek admission of evidence showing that a State's witness was biased. The PCR court denied these claims, and Respondent maintains that the decision is reasonable and entitled to deference.

3   - OPINION AND ORDER

A federal court may not grant habeas relief regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *see Penry v. Johnson*, 532 U.S. 782, 793 (2001) ("even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable"). To meet this highly deferential standard, a petitioner must demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

To establish a claim for ineffective assistance under *Strickland*, a petitioner must show that 1) "counsel's performance was deficient" and 2) the "deficient performance prejudiced the defense." 466 U.S. at 687. To establish deficient performance and prejudice, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Unless a petitioner "makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Judicial review of an attorney's performance under *Strickland* is "highly deferential" and carries a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," which, under the relevant circumstances, "might be considered sound trial strategy." *Id.* at 689 (citation omitted). Counsel must be afforded "wide latitude … in making tactical decisions" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 689-90. Notably, a "doubly deferential" standard applies when "a federal court reviews a state court's *Strickland* determination." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). The state court "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101.

A. Petitioner's Statements to Police

While investigating the deaths of Cooper and Kotkins, police detectives interviewed Petitioner on four separate occasions and recorded his statements during nine hours of questioning. During one of the interviews, investigators informed Petitioner that he was seen, via surveillance cameras, walking to the back of Cooper and Kotkins's home around the time of their deaths. Tr. 2684-85, 3121, 3345. Petitioner then told investigators that, contrary to his previous statements, he had gone to their home and seen Cooper's dead body. Tr. 3122-24. When asked why he did not call 911, Petitioner stated that he panicked and ran from the scene, because he "was just afraid for my family. These people aren't normal people." Tr. 2506. Petitioner also told investigators that Cooper's associates in Las Vegas might have been involved with the murders and that he also knew of a "Russian" and several others who were involved with Cooper's drug dealing. Tr. 2488, 2492, 2507.

5    - OPINION AND ORDER

At trial, the State indicated its intent to introduce Petitioner's statements about his contacts with Cooper and Kotkins and his activities on the day of their deaths. In anticipation that the defense would seek admission of hearsay statements Petitioner made to police, the State filed a motion in limine to exclude them. Tr. 2480. Petitioner's counsel argued that, under the Oregon evidentiary rule of completeness, some of Petitioner's statements should be admitted, including his statements that Cooper had dangerous associates in Las Vegas and that Petitioner did not call 911 when he discovered Cooper's body because he panicked was afraid for his family. Tr. 2487-88, 2492-93, 2504-08. Although counsel argued that those statements should be admitted "in the interests of fairness," he did not specifically argue that the Due Process Clause of the Fourteenth Amendment required their admission. Tr. 2493. The trial court found that Petitioner's proffered statements were inadmissible hearsay and excluded them from trial.

Petitioner argues that counsel was constitutionally inadequate for failing to argue that the federal Due Process Clause required admission of the excluded statements. The PCR court rejected this claim, finding that counsel "reasonably focused on the arguments that he thought had the most merit." Resp't Ex. 143 at 9. The PCR court further found that Petitioner could not show prejudice, because raising a due process argument would not have likely changed the trial court's decision and a reasonable jury would have viewed Petitioner's "self-serving statements full of hearsay and speculation… as little more than an effort by petitioner to suggest some other mysterious strangers may have committed the murders." Resp't Ex. 143 at 9-10. The PCR court also noted that admission of the statements would have been improper because Petitioner did not testify and was not subject to cross-examination. Petitioner maintains that the PCR court's decision unreasonably applied federal law.

Under clearly established federal law, state evidentiary rules may not be applied in a manner that prevents criminal defendants from "presenting directly exculpatory evidence when the evidence is essential to the defendant's case and bears sufficient indicia of reliability." *Ayala v. Chappell*, 829 F.3d 1081, 1113 (9th Cir. 2016); *see Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973) (finding that the defendant's due process rights were violated when the trial court's evidentiary rulings prevented the defendant from introducing evidence that a third party had confessed to the crime). At the same time, *Chambers* "does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *United States v. Scheffer*, 523 U.S. 303, 316 (1998). Rather, a defendant must show that the out-of-court statements are essential to the defense and possess persuasive indicia of trustworthiness to overcome hearsay rules of exclusion. *Ayala*, 829 F.3d at 1113-14.

Regardless of whether the PCR court reasonably found no deficiency arising from counsel's failure to raise a due process argument, the PCR court reasonably found no prejudice. The trial court rejected counsel's argument that "fairness" required the admission of Petitioner's statements, and nothing in the record suggests that invoking due process would have altered the trial court's ruling. As the PCR court found, Petitioner's statements were self-serving, uncorroborated by other evidence, and lacked any indicia of trustworthiness. In fact, Petitioner's explanation for failing to call 911 after finding Cooper's body – because he panicked – was contradicted by evidence showing that Petitioner calmly walked away from the house. Tr. 4266. Finally, Petitioner chose not to testify, and the State would have had no opportunity to cross-examine him about his out-of-court assertions. Given this record, it is unlikely that the trial court would have admitted Petitioner's statements on due process grounds. *Ayala*, 829 F.3d at 1114.

Even if the statements had been admitted, the PCR court reasonably found that a reasonable jury would not have been swayed by uncorroborated assertions of "dangerous" people associated with Cooper. As noted above, Petitioner presented no evidence to support his statements and the State presented substantial evidence of Petitioner's culpability during the multi-week trial. *See Tooley*, 265 Or. App. at 33-38.

B.  Petitioner's Possession of a .45 Caliber Handgun

As part of their investigation, police officers searched Petitioner's vehicle and found a .45 caliber firearm in a holster underneath the seat. It is undisputed that the .45 firearm was not the murder weapon, and this fact was made clear at trial. *See* Tr. 2899.

During trial, the State called Melissa Arne, a criminalist for the Gresham Police Department involved with the search of Petitioner's vehicle, and asked her to identify a photograph of the truck's interior. Arne answered, "Yes, this is a photograph of a gun in a holster that was found under the driver's seat of that truck." Tr. 2889. Counsel objected to the photograph on grounds of relevance, arguing that it was prejudicial and not relevant to any evidence presented to the jury. Tr. 2890, 2900. The trial court sustained counsel's objection and the State did not ask Arne further questions about the gun. Trial counsel did not move to strike Arne's testimony or move for a mistrial.

Another State's witness who was a friend of Petitioner's, Michael Bastrica, testified that he saw a .45 caliber firearm next to Petitioner on one occasion. Tr. 3362. Counsel objected on grounds of relevance, and the objection was overruled. Bastrica then testified that the gun was "a semiautomatic handgun" that "takes a magazine." Tr. 3362.

Petitioner alleges that trial counsel rendered ineffective assistance by failing to move to strike Arne's testimony or for a mistrial and by failing to challenge Bastrica's testimony on grounds of unfair prejudice. The PCR court reasonably rejected these claims.

As the PCR court noted, whether to move to strike Arne's testimony or seek a mistrial are strategic decisions. Given that the jury heard counsel's objection to Arne's testimony and did not view the photograph of the firearm, it is unlikely that the trial court would have granted a motion to strike or for mistrial, and any further objection would have served to only highlight the testimony. Resp't Ex. 143 at 11. Likewise, the PCR court reasonably found no deficiency with respect to Bastrica's testimony. Counsel objected on grounds of relevance, and counsel's objection was reasonable because a .45 caliber firearm was not used in the killings and counsel had successfully objected to Arne's testimony on the same ground.

The PCR court's finding of no prejudice was also reasonable. Petitioner fails to show that the trial court would have found Arne's or Bastrica's testimony unfairly prejudicial when the jury heard other evidence regarding Petitioner's familiarity with firearms. Tr. 3263-64, 3286-90, 3362-63. Further, Petitioner fails to show that Arne's and Bastrica's brief testimony about a weapon unrelated to the murders had a likely effect on the jury's verdict. As the PCR court noted, the State did not mention the .45 caliber firearm in its closing arguments and substantial evidence connected Petitioner to the killings. Resp't Ex. 143 at 11.

C. Evidence of Witness Bias

Finally, Petitioner alleges that counsel failed to effectively argue for the admission of evidence to impeach David Weismandel, a witness called by the State.

On direct examination, Weismandel testified that, sometime after Cooper and Kotkins were killed, he and Petitioner went to a pharmacy to pick up a prescription for Oxycontin. Tr.

3457-58. Weismandel testified that Petitioner commented about rumors Weismandel might have heard about Petitioner and Cooper and said, "Well, I did what I did to protect my family. And I just want you to know that I would never do anything in retaliation to hurt someone else's family, or anything like that." Tr. 3459. Weismandel interpreted Petitioner's statement as a confession that he had killed Cooper and Kotkins. Tr. 3459. Weismandel also testified that he had not made entered into any cooperation agreements with the State in exchange for his trial testimony. Tr. 3455.

On cross-examination, Weismandel admitted that he was on probation and had violated the terms of his probation several times:

> Q: Since the time that you talked to the detectives back in March of 2009, has your probation been revoked?
>
> A: One probation has, yes.
>
> Q: And the other ones have not?
>
> A: Yes.
>
> Q: Okay. And how many violations since that time of probation have you had?
>
> A: Multiple. I –
>
> Q: Multiple?
>
> A: Yeah. Multiple, yes.

Tr. 3462. Counsel then attempted to introduce eight probation violation orders, and the State objected. Counsel argued that the proposed exhibits were admissible to impeach Weismandel's testimony that he had not received any benefit in exchange for his testimony, stating, "I think the sheer volume of violations would be indicative that this witness at least believes that he's being

granted special favors because of his testimony." Tr. 3465, 3469. The trial court sustained the State's objection to the probation violation reports and they were not admitted.

Petitioner contends that counsel was ineffective by failing to move for introduction of the reports under Oregon Evidence Code (OEC) 609-1(1), which provides that the "credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest." The PCR court rejected this claim, concluding that the probation violation records would not have been admissible under Oregon law. Resp't Ex. 143 at 12. The PCR court's resolution of state law is binding on this Court. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (explaining that questions of state law play "no part of a federal court's habeas review of a state conviction"). Moreover, OEC 609-1(2) prohibits "additional" evidence of bias or interest if "a witness fully admits the facts claimed to show the bias or interest of the witness." Weismandel admitted violating his probation multiple times, and the reports would not have been admissible. Thus, no deficiency or prejudice arose from the failure to invoke OEC 609-1.

In sum, Petitioner fails to show that the PCR court unreasonably applied *Strickland* when denying his claims, and he is not entitled to habeas relief.

## CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED. A Certificate of Appealability is DENIED on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

DATED this 12th day of July, 2023.

        /s/Ann Aiken
    ANN AIKEN
  United States District Judge

11     - OPINION AND ORDER